GENERAL ELECTRIC COMPANY *vs.* MAURICE CALLAHAN
& SONS, INC. & another.

Berkshire.    February 22, 1973. — April 5, 1974.

Present: ROSE, KEVILLE, & ARMSTRONG, JJ.

*Equity Pleading and Practice,* Report.    *Outdoor Advertising Board.*
*Billboard.    Regulation.    Permit.    Nuisance.    Moot Question.*

In the circumstances, where a report of a suit in equity under G. L.
c. 214, § 31, contained a question as to the relief to which the
plaintiff was entitled on the facts set forth in a master's report
confirmed by a decree of the judge who made the report, and also
a question of the propriety of overruling a demurrer to the bill,
this court assumed that the question as to the demurrer was
properly before it although the demurrer had been overruled by
another judge.  [126]

Where the Outdoor Advertising Board adopted a regulation under
G. L. c. 93, § 29, by a vote reciting that the regulation should
become effective upon the filing of a copy thereof with the Secre-
tary of the Commonwealth pursuant to c. 30, § 37, it became
effective upon such filing notwithstanding that in a certificate of
filing by the secretary of the board it was stated that the regula-
tion was to become effective on a specified date some three weeks
after the filing.  [126-130]

Even if the billboards maintained on certain premises in violation of
a regulation of the Outdoor Advertising Board were not a nuisance
at common law, that circumstance did not bar a suit in equity by
an abutter under G. L. c. 93, § 31, to enjoin the maintenance of
the billboards.  [130]

An abutter of premises on which billboards were maintained in viola-
tion of a regulation of the Outdoor Advertising Board had no
administrative remedy under G. L. c. 93, § 29A, which the
abutter must exhaust before seeking to enjoin the maintenance of
the billboards in a suit in equity under § 31.  [130-131]

A suit in equity under G. L. c. 93, § 31, by an abutter of certain
premises to enjoin the maintenance thereon of billboards in viola-
tion of a regulation of the Outdoor Advertising Board was not
barred on the alleged ground that the plaintiff's exclusive remedy
was a bill under c. 30A, § 14, for judicial review of a decision of
the board granting the permits for the billboards.  [131]

Where it appeared that, after the Outdoor Advertising Board had adopted under G. L. c. 93, § 29, a regulation providing that no permit should be granted for the location or maintenance of billboards or other advertising devices within a municipality unless such location or maintenance was in conformity with applicable municipal ordinances or by-laws, the board, with the approval of a city council, granted permits for the erection in the city of billboards which were of a size and nature violative of the city's zoning ordinance and therefore violative of such regulation of the board, an abutter of the premises on which the billboards had been erected was entitled, in a suit in equity against the proprietor of the billboards under § 31, to an injunction against continued maintenance thereof. [132]

In a suit in equity under G. L. c. 93, § 31, by an abutter of premises in a city to enjoin the maintenance on such premises of billboards violative of the city's zoning ordinance and therefore violative of a certain regulation of the Outdoor Advertising Board, there was no merit in a contention by the defendant that the case had become moot by reason of the adoption of a new zoning ordinance where it appeared that the billboards were of a size violative of the new ordinance also. [132-133]

BILL IN EQUITY filed in the Superior Court on January 5, 1970.

A demurrer to the bill was overruled by *Beaudreau, J.* The suit was heard on a master's report by *Sgarzi, J.*, who entered an interlocutory decree confirming it and thereupon reported the suit.

*F. Sydney Smithers* for the plaintiff.

*William W. Simons* for Maurice Callahan & Sons, Inc.

*Edward D. Kalman,* Deputy Assistant Attorney General (*Robert H. Quinn,* Attorney General, with him) for Outdoor Advertising Board.

KEVILLE, J. This is a bill in equity brought in the Superior Court to restrain the erection and maintenance of two billboards on certain premises in Pittsfield. The defendant Maurice Callahan & Sons, Inc. (Callahan) demurred to and answered the bill while the defendant Outdoor Advertising Board (the board) filed only an answer. The demurrer was overruled by a judge of the Superior Court and Callahan claimed an appeal. The case was referred to a master, who filed a report to

which no objections were made and, on the plaintiff's motion, an interlocutory decree confirming the master's report was entered by another judge of the Superior Court. The second judge then reported the case to the Supreme Judicial Court which transferred it to us pursuant to G. L. c. 211A, § 12.

We treat the report as having been filed under G. L. (Ter. Ed.) c. 214, § 31, whereunder a judge of the Superior Court "by whom a case is heard for final decree may reserve and report the evidence and all questions of law therein for the consideration of the full court . . .." Accordingly, we interpret the second of the two questions specifically set forth in the report — asking to what, if any, relief the plaintiff is entitled upon the facts contained in the master's report — as bringing before us all questions of law argued by the parties. The answer to the first question in the judge's report, viz., whether Callahan's demurrer was properly overruled, is encompassed in our discussion of the second question. Therefore, we assume that the first question is properly before us although the demurrer was overruled by a judge other than the one who signed the report. Cf. *John Gilbert Jr. Co.* v. *C. M. Fauci Co.* 309 Mass. 271, 272-273 (1941); *Plante* v. *Louro,* 345 Mass. 456, 458 (1963).

Facts alleged in the bill, which are admitted by stipulation, and additional facts found by the master are as follows: On July 8, 1969, the board voted to amend its regulations pursuant to G. L. c. 93, § 29 (as amended through St. 1958, c. 143),[1] by the insertion of a new

---

[1] "The outdoor advertising board, herein and in sections twenty-nine A, thirty A and thirty-one called the board, may make, amend or repeal rules and regulations for the proper control and restriction of billboards, signs and other advertising devices, except as provided in section thirty-two, on public ways or on private property within public view of any highway, public park or reservation. Such rules and regulations may require that said billboards, signs or other devices be located in business, commercial, industrial, marketing or mercantile areas, or on unrestricted commercial arteries and adjacent

section, 9K, prohibiting the issuance by the board of any permit for a billboard, sign or other device except in conformity with applicable municipal ordinances or by-laws. The vote of the board recited that it was to become "effective on filing of a copy hereof with the Secretary of the Commonwealth pursuant to . . . [G. L. c. 30, § 37]." The text of the vote, including § 9K, is set forth in the margin.[2] A copy of the vote was filed on

---

to commercial enterprises; may prescribe standards of size, setback and clearance, considering the public interest; may require said billboards, signs or other devices to be licensed by the board by the issuance of permits in accordance therewith and with this section; and may prescribe permit fees, to be fixed with regard to the cost of administering this section, and said fees need not be uniform throughout the commonwealth. No permit, whether permanent or temporary, for a billboard, sign or other advertising device shall be issued unless written notice of the application therefor stating the proposed location shall have been given at least thirty days earlier to the city or town in which the proposed billboard, sign or other advertising device is to be located. The board shall delegate to the executive director authority to issue licenses or permits, subject to the provisions of section twenty-nine A, where no objection has been received to the pending application. Except as hereinafter provided, before establishing or amending rules and regulations under this section, the board shall hold duly advertised public hearings in Boston and in such other cities and towns within the commonwealth as it deems necessary or expedient. Cities and towns may further regulate and restrict said billboards, signs or other devices within their respective limits by ordinance or by-law, not inconsistent with sections twenty-nine to thirty-three, inclusive, or with said rules and regulations."

[2] "After a duly advertised public hearing held in the Outdoor Advertising Division in the city of Boston on Tuesday, May 6, 1969, the following amendment to the Rules and Regulations for the control and restriction of billboards, signs or other advertising devices, as authorized by Section 29 of Chapter 93 of the General Laws, are hereby adopted, *effective on filing of a copy hereof* with the Secretary of the Commonwealth pursuant to Section 37 of Chapter 30 of the General Laws [emphasis supplied].

"New paragraph to be added to Section 9

K. No license or permit shall be granted for the location or maintenance of billboards, signs or other advertising devices within a city or town, except where such location or maintenance is in conformity with applicable city and town ordinances and by-laws enacted in accordance with Section 29 of Chapter 93 of the General Laws; and

July 23, 1969. To it, however, was appended a certification by the board secretary "that the Outdoor Advertising Board voted on July 8, 1969 to adopt the foregoing Rules and Regulations and further that on July 23, 1969 I filed a true copy of these Rules and Regulations with the Secretary of State, together with a citation of the law by authority of which these regulations were adopted, *to become effective August 15, 1969*" (emphasis supplied).

On July 30, 1969, Callahan filed applications with the board for permits for the two billboards which are the subject of the plaintiff's bill. Each of the billboards was to be six hundred square feet in area advertising an off-premises use. Under the Pittsfield zoning ordinance applicable to the district in which the billboards were to be located, the maximum permissible size of any billboard was one hundred and sixty-five square feet, and no billboards advertising an off-premises use appear to have been permissible regardless of size. Notwithstanding the size of the billboards the city council of Pittsfield, having been notified by the board of the pendency of Callahan's applications, voted to approve the same on August 12, and so advised the board.[3] The board voted its approval of the applications on September 30, so advised the Pittsfield authorities on October 1, and issued permits for

---

no ordinance or by-law shall be deemed inconsistent with the rules and regulations of the Board on the ground that such ordinance or by-law prohibits the location or maintenance of a billboard, sign or other advertising device which in the absence of said ordinance or by-law would be in conformity with the said rules and regulations.

Board of the Outdoor Advertising Division
James T. Bleiler, Chairman,
Joseph V. Bottari, Jr., Member,
Charles A. Bisbee, Jr., Member.

Attest: James J. Morrissey,
Board Secretary."

[3] There is no indication in the record that the city council was aware of the adoption of § 9K at this time.

the two billboards dated October 3. The billboards were erected and in place by January 5, 1970.

The plaintiff, an abutter of the premises on which the billboards were erected, brought this bill under G. L. c. 93, § 31 (as amended through St. 1955, c. 584, § 7),[4] contending that § 9K of the board's regulations was in effect when Callahan filed its applications, that the permits were granted in violation of that regulation, and that Callahan's billboards were therefore erected unlawfully and subject to removal under G. L. c. 93, § 31 (see fn. 4).

We find no merit in the defendants' contention that the certification of the board's secretary served to postpone its effective date to August 15, 1969. Section 9K had become effective prior to the date of Callahan's applications. Under G. L. c. 30A, § 5 (as appearing in St. 1954, c. 681, § 1), such regulations "become effective upon filing [with the Secretary of the Commonwealth], unless a later date is required by any law or is *specified by the agency in the regulation*" (emphasis supplied). Authority to adopt the regulation vested exclusively in the board. G. L. c. 93, § 29. The board and not its secretary was authorized to specify a later effective date under G. L. c. 30A, § 5; and its intention was manifest in the first paragraph of its vote adopting the regulation. (See fn. 2.) Therefore, the secretary's addendum to his certification of the board's vote, indicating a later effective date, was gratuitous and is not to be viewed as evidence of action taken by the board to postpone the effective date of § 9K. See *Oakes* v. *Hill*, 14 Pick. 442, 448

---

[4] "The supreme judicial and superior courts shall have jurisdiction in equity upon petition of the attorney general, of any city or town or any officer thereof, or of any interested party, to restrain the erection or maintenance of any billboard, sign or other device erected or maintained in violation of any rule, or regulation, adopted by the board under section twenty-nine, and to order the removal or abatement of such billboard, sign or device as a nuisance."

(1833); *Commonwealth* v. *Richardson,* 142 Mass. 71, 74 (1886).

There is no substance to the second contention advanced by Callahan (but not by the board) that no relief can be afforded the plaintiff because the billboards are not a nuisance at common law. The plaintiff's bill is not based on a common law concept but on a very different concept of "nuisance" embodied in G. L. c. 93, § 31 (see fn. 4).

Callahan next contends that the plaintiff is barred by its failure to exhaust administrative remedies available to it under G. L. c. 93, § 29A (as inserted by St. 1955, c. 584, § 5).[5] However, neither § 29A nor the board's regulations make provision for notification to anyone but a city or town when an application is received or a permit granted. There is nothing in the record before us to suggest that the plaintiff knew of Callahan's applications until the permits had been issued and the installation of the billboards had begun. Assuming, without deciding, that the plaintiff had standing to file an

---

[5] "Whenever, within thirty days after notification to the city or town, the board shall have received written objection to an application for a permit, such permit shall issue only after consideration by the board of such objection, and whenever, within thirty days after notification to the city or town, the board shall have received written notice of intention to appear in opposition to the application, the board shall issue such permit only after a public hearing on due notice to the applicant and the city or town. Any applicant for a permit, or any city or town wherein a permit is to be issued, aggrieved by a decision of the executive director with respect to the issuance or revocation of a license or permit for the erection or maintenance of a billboard, sign or other advertising device, may, within fifteen days thereafter, appeal from such decision to the board, which may, after a public hearing held on due notice, order such decision to be affirmed, modified or annulled. The board may in its discretion order a public hearing with respect to any decision of the executive director within fifteen days after such decision, and may after such hearing order such decision to be affirmed, modified or annulled. The findings of the board on matters heard before it shall be final except with respect to matters of law."

objection to the applications and to demand a public hearing thereon under the first sentence of § 29A (see fn. 5), it is clear that the plaintiff could not have appealed from the issuance of the permits to the board under the second sentence of that section. The plaintiff's remedy under § 29A was at best so illusory that it would have been unreasonable to require that the plaintiff resort to it as a prerequisite to judicial relief. Cf. *Boston Edison Co.* v. *Selectmen of Concord,* 355 Mass. 79, 84 (1968); *Ouellette* v. *Building Inspector of Quincy,* 362 Mass. 272, 276-277 (1972).

Callahan also contends that the bill will not lie for the reason that the plaintiff's exclusive remedy is through a bill under G. L. c. 30A, § 14 (as amended through St. 1968, c. 637, § 1) for judicial review of the board's decision granting the permits. Reliance is placed on *Selectmen of Truro* v. *Outdoor Advertising Bd.,* 346 Mass. 754 (1964), and *Building Inspector of Northampton* v. *Springfield Advertising Co.,* 353 Mass. 763 (1968), in which bills brought under G. L. c. 93, § 31 (see fn. 4) were ordered dismissed for that reason. Those cases, however, are not controlling here. The bills involved in those cases were brought by officials of towns which, unlike the present plaintiff, had effective administrative remedies under G. L. c. 93, § 29A (see fn. 5) which they failed to utilize. In addition the plaintiffs in those cases sought to enforce municipal by-laws rather than regulations of the board[6] and G. L. c. 93, § 31, confers equity jurisdiction only as to the latter. We find nothing in the cases cited by Callahan which would foreclose the plaintiff, perforce a stranger to the board's proceedings, from equitable relief even if it were conceded that the plaintiff had standing as an "aggrieved" person to challenge its proceedings under G. L. c. 30A, § 14.

---

[6] In examining the *Northampton* case we can and do take judicial notice of the record before the Supreme Judicial Court. *Flynn* v. *Brassard,* 1 Mass. App. Ct. 678, 681 (1974).

The central issue is whether the plaintiff's bill falls within the purview of G. L. c. 93, § 31 (see fn. 4). No contention is made that the plaintiff is not an "interested party" within the meaning of § 31. Callahan appears to argue, however, that the billboards were not "erected or maintained in violation of any rule, or regulation, adopted by the board." This contention has already been dealt with to the extent that it is based on the assumption that § 9K of the board's regulations did not take effect until after Callahan's application had been filed. Unlike the *Truro* and *Northampton* cases, *supra,* the present one was brought after the board had imposed upon itself "a flat mandate" to issue no permit except in conformity to applicable zoning ordinances and by-laws. *John Donnelly & Sons, Inc.* v. *Outdoor Advertising Board,* 361 Mass. 746, 752 (1972). Nor does the action of the Pittsfield city council in purporting to approve Callahan's applications excuse the violation of § 9K of the board's regulations. Nothing in the record supports the hypothesis that the statutory requirements for amending the pertinent zoning ordinance or for granting a variance or special permit were met. See G. L. c. 40A, § 4 (as amended through St. 1966, c. 199), § 6 (as amended through St. 1968, c. 194), § 17 (as amended through St. 1968, c. 366). We conclude that the Superior Court had jurisdiction to entertain the bill, and to grant equitable relief based upon the findings of the master.

In oral argument before this court Callahan advanced the further contention that the case had become moot by the adoption of a new zoning ordinance by the city. council of Pittsfield, after the case had been reported, under which billboards are permissible in the district in which Callahan's are located if approved by the city council. The existence and terms of the new ordinance, insofar as pertinent to the facts of this case, have been stipulated by the parties and we therefore treat the issue as properly before us. See *Russell* v. *Secretary of the Commonwealth,* 304 Mass. 181, 182 (1939). The

pertinent section of the new ordinance, however, contains a proviso that no such billboard "shall exceed twenty-five (25) by twelve (12) feet in size." The fact that each of Callahan's billboards is twice that size is sufficient to dispose of the contention of mootness.

Our answer to the judge's first question is that the defendant Callahan's demurrer was rightly overruled. Our answer to the second question is that a final decree with costs is to be entered in the Superior Court enjoining the defendant Callahan from continuing to maintain the subject billboards in accordance with the second prayer of the plaintiff's bill.

*So ordered.*